IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DIANE POWERS,

               Plaintiff,

               v.

SELCON COMMUNITY CREDIT
UNION & TRANSUNION LLC,

               Defendants.

Case No. 6:15-cv-00292-MC

OPINION AND ORDER

MCSHANE, Judge:

Plaintiff Diane Powers alleges defendant SELCO COMMUNITY CREDIT UNION (SELCO) violated the Fair Credit Reporting Act (FCRA) by failing to conduct a reasonable investigation of a disputed debt. The parties filed cross motions for summary judgment. *See* ECF Nos. 28, 30. Because the reasonableness of the investigation remains a question of fact, the motions are DENIED.

## BACKGROUND

Most of the facts are not in dispute. The parties agree that Powers owed SELCO a debt as of August 31, 2014. The parties agree that SELCO accurately reported that debt to

1 – OPINION AND ORDER

TransUnion, a credit reporting agency (CRA) on August 31, 2014.[1] The parties agree Powers

paid the debt and closed the account on September 3, 2014. The parties agree that on September

6, Powers disputed the debt to TransUnion.

CRAs provide furnishers of information (such as SELCO) notice of consumer disputes

through Automated Consumer Dispute Verifications (ACDVs). ACDVs are sent and responded

to through the e-OSCAR system.[2] On September 6, 2014, TransUnion sent SELCO an ACDV

regarding Powers's dispute. Furnishers must provide timely responses to ACDVs. The parties

agree SELCO timely responded to the four ACDVs at issue.

ACDVs provide various boxes or fields such as "Date Opened," "Amount Due," "Date of

Account Information," and "Date Closed." Miller Decl.; ECF No. 29, 3 ¶ 8. A CRA submitting

an ACDV typically submits a dispute code. Here, TransUnion entered code 109, stating,

"Disputes Current Balance – Verify Original Loan Amount, Scheduled Monthly Payment

Amount, Actual Payment Amount, Amount Past Due, Current Balance, and Original Charge-Off

Amount." Miller Decl.; ECF No. 29-1, 1. Although Powers disputed the fact that the debt

remained on her credit report after September 3, TransUnion entered August 31, 2014 as the

"Date of Account Information." Britt Miller, a Lending Support Specialist at SELCO who

responded to the relevant ACDVs, submitted a declaration stating:

> When SELCO received the disputes on Ms. Powers' account, TransUnion had
> these fields filled out with the information that is being disputed. On the printed
> ACDV forms, the box below each of these field titles is the information provided
> by TransUnion. The empty boxes below TransUnion's information is where
> SELCO would list any updates or changes to the information.

Miller Decl., ¶ 8.

---

[1] Powers brought the same claims against TransUnion, but settled those claims.
[2] The CRAs created the e-OSCAR system.

2 – OPINION AND ORDER

Miller states that for every ACDV SELCO receives, it verifies the accuracy of the information "as of the date of account information on the dispute. Miller Decl., ¶ 4. According to Miller:

> When e-OSCAR trained me, and all SELCO employees who respond to ACDVs, it was made clear that we were to verify the account information as of the date in the "Date of Account Information" field. The date we received or responded to the dispute has no bearing on the date of account information which we are verifying. A copy of the training manual e-OSCAR provided in its most recent training attended by a SELCO employee is attached hereto as Exhibit "7" and by this reference incorporated herein. In that manual, the purpose and use of the "Date of Account Information" field is clearly explained as the date which we are being request[ed] to verify the information as of in order to respond to the credit reporting agency.

Miller Decl., ¶ 9.

In the "Description and Process Tips" for the "Date of Account Information" field, the e-OSCAR manual states:

> The date entered in this field tells the CRA that "as of" X date, the consumer's account information is in the status specified in the ACDV. All account information, such as **Account Status** and **Current Balance**, must be reported as of the date in this field.

Miller Decl. Ex. 7, 24.

Because the ACDV listed August 31, 2014 as the "Date of Account Information," and because Powers owed the debt as of August 31, 2014, Miller verified the information contained in the ACDV. TransUnion receive SELCO's response on September 16, 2014.

That same day, Powers again disputed the debt to TransUnion and TransUnion sent a second ACDV to SELCO. This ACDV again listed August 31, 2014 as the "Date of Account

3 – OPINION AND ORDER

Information." Miller Decl., Ex. 3. The ACDV contained the identical dispute code from the first ACDV. It also contained a second dispute code stating "Claims company will change. Verify all account information." The second ACDV also contained "FCRA Relevant Information" stating "Consumer plans to submit relevant doc to support their claim.. Paid in full on 09/03/2014. $228.81.. Balance should be zero.. account closed on 09/03/2014." *Id.*

On October 2, 2014, before SELCO responded to the September 16 ACDV, SELCO provided its monthly report to the CRAs. This report accurately alerted TransUnion to the fact that Powers closed her account with a balance of $0. Wagner Decl., ¶ 6. TransUnion updated the report accordingly.

On October 4, SELCO verified that the information in the second ACDV was correct. As noted, SELCO states its response was limited, in accordance with the e-OSCAR manual and other training provided by e-OSCAR, to verifying the information as of August 31, 2014, the "Date of Account Information" provided by TransUnion. Don Wagner, an Investigator III, Litigation Support with TransUnion, contradicts Miller's declaration. Wagner states SELCO's October 4 response to the second ACDV "verf[ied] that all the Account information as reflected on the September 16, 2014 ACDV, including a $202 balance, was accurate information as of October 4, 2014. Consequently, Trans Union updated its reporting of the Account to include the $202 balance as directed by Selco in its ACDV response." Miller Decl., Ex. 1, 2 ¶ 7.

On October 30, 2014, Powers disputed the debt again. TransUnion sent similar ACDV to SELCO. As that ACDV again listed August 31 as the "Date of Account Information," SELCO verified the information contained in the ACDV.

On March 11, 2015, TransUnion sent a fourth ACDV to SELCO. Like the others, it contained the August 31 date. Miller states that she now understood the misunderstanding:

4 – OPINION AND ORDER

> In March, 2015, when I received the fourth ACDV, I had seen this dispute
> repeatedly. I suspected the account had never been updated properly due to
> Plaintiff's continued disputes. I again stated that SELCO's reporting was correct
> as of August 31, 2014. However, in order to attempt to prevent the repeated
> requests for verification as of August 31, 2014, I voluntarily added a new line of
> information that as of September 3, 2014, the account was closed and with a
> balance of $0, in hopes TransUnion would update their records accordingly.

Miller Decl., ¶ 12.

TransUnion then updated Powers's report to show that as of September 3, 2014, the

account was closed with a balance of $0.

## STANDARDS

The court must grant summary judgment if there is no genuine issue of material fact and

the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). An issue is

"genuine" if a reasonable jury could return a verdict in favor of the non-moving party. *Rivera v.*

*Phillip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005) (citing *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 248 (1986)). A fact is "material" if it could affect the outcome of the case. *Id.* The

court reviews evidence and draws inferences in the light most favorable to the non-moving party.

*Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 988 (9th Cir. 2006) (quoting *Hunt v.*

*Cromartie*, 526 U.S. 541, 552 (1999)). When the moving party has met its burden, the non-

moving party must present "specific facts showing that there is a genuine issue for trial."

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (quoting Fed. R. Civ. P.

56(e)).

## DISCUSSION

Congress enacted the FCRA, 15 U.S.C. §§ 1681-1681x, "to ensure fair and accurate

credit reporting, promote efficiency in the banking system, and protect consumer privacy."

*Baldin v. Wells Fargo Bank, N.A.*, 2013 WL 6388499 at *6 (D. Or. 2013) (quoting *Safeco Ins. Co. of Am. V. Burr*, 551 U.S. 47, 52 (2007)). CRAs assemble credit information on consumers and provide consumer credit reports to third parties. § 1681a(f). The FCRA places different obligations on "consumer reporting agencies" and "furnishers" of credit information.

The obligations of "furnishers" are found in § 1681s-2. § This case concerns the obligations contained in § 1681s-2(b), which create a private right of action for a consumer against a furnisher. *Gorman v. Wolpoff*, 585 F.3d 1147, 1154 (9th Cir. 2009).

The parties agree that a plaintiff bringing a claim under § 1681s-2(b)(1)(A) must prove: (1) the furnisher received notice of the dispute from the CRA; (2) the furnisher failed to perform a reasonable investigation of the dispute; (3) the failure was willful or negligent; and (4) the plaintiff was harmed. *Baldin*, 2013 WL 6388499 at *7. The only dispute is whether SELCO's investigation was reasonable.

The Ninth Circuit confirmed that the notice to the furnisher from the CRA triggers the obligation to conduct a reasonable investigation under § 2(b)(1)(A). *Gorman*, 584 F.3d at 1157. The Ninth Circuit noted:

> Such notice must include "all relevant information regarding the dispute that the [CRA] has received from the consumer." § 1681i(a)(2)(A). It is from this notice that the furnisher learns the nature of the consumer's challenge to the reported debt, and it is the receipt of this notice that gives rise to the furnisher's obligation to conduct a reasonable investigation. The pertinent question is thus whether the furnisher's procedures were reasonable in light of what it learned about the nature of the dispute from the description in the CRA's notice of dispute.

*Id.*

As discussed, the parties filed cross motions for summary judgment. Powers argues the e-OSCAR manual is inadmissible. First, Powers argues the manual is not properly authenticated.

6 – OPINION AND ORDER

This argument is meritless. Miller's declaration states the manual was provided by e-OSCAR during training sessions provided by e-OSCAR. Authentication requires nothing more. Of course this does not prevent Powers from making her own arguments related to the manual, or even from calling witness from e-OSCAR to refute Miller's declaration or testimony.

In the alternative, Powers argues the manual should be stricken because SELCO never provided the manual during discovery. Powers requests re-opening discovery to allow it to investigate the manual. Powers's objections are denied. Miller was deposed over six months ago. During that deposition, it became clear that SELCO's defense in this matter would rest on training provided by e-OSCAR regarding the "Date of Account Information." Additionally, SELCO argues it was not until receiving Wagner's declaration immediately before the discovery cutoff that it became aware that the August 31 date was at issue. The parties will of course be able to argue and present evidence about the meaning of the e-OSCAR manual and any other training provided by e-OSCAR.

Turning to Powers's motion for summary judgment, Powers argues SELCO's investigation was clearly unreasonable and the only dispute is damages. Powers ignores Miller's declaration stating TransUnion filled in the "Date of Account Information" and, under the e-OSCAR system, furnishers only review the information furnished as of the "Date of Account Information." A jury could certainly take that information, along with the undisputed fact that Powers owed the debt on August 31, 2014, and conclude SELCO's investigation was reasonable. In other words, a jury could conclude that any error here was TransUnion's, not SELCO's.

Similarly, SELCO argues there is no genuine issue of material fact that its investigation, based on the information provided by TransUnion, was reasonable. In addition to making a reasonable inquiry into any consumer dispute, the FCRA requires furnishers to report any

7 – OPINION AND ORDER

incomplete or inaccurate information found during the inquiry. § 1861s-2(b)(1)(D). As discussed in *Gorman*, the "pertinent question is thus whether the furnisher's procedures were reasonable in light of what it learned about the nature of the dispute from the description in the CRA's notice of dispute." 584 F.3d at 1157. Although SELCO relies on the "Date of Account Information" field, the ACDVs contained other information related to the dispute.

For example, the September 16 ACDV included information in the "FRCR Relevant Information" field. There, TransUnion alerted SELCO that "Consumer plans to submit relevant doc to support their claim.. Paid in full on 09/03/2014. $228.81 Balance should be zero.. account closed on 09/03/2014." Miller Decl., Ex. 3. The October 30, 2014 ACDV provided additional information in that field: "On September 3, 2014, Plaintiff paid the debt at issue in full by paying $202, the balance as of that date. Plaintiff disputed the Selco a/c through TransUnion shortly after 09/03/2014. Defendant Selco verified the accuracy of the information in resp." Miller Decl., Ex. 4.

The e-OSCAR manual describes the "FCRA Relevant Info" field:

Dispute related information and other details that have been provided by the consumer and/or the CRA. This is extremely important information that should be considered when responding to the dispute. This information along with the **Dispute Code** will provide insight into why the consumer disputed the account.

Miller Decl., Ex. 7, 17.

The e-OSCAR manual also provides several different "Response Codes" for a furnisher to use when responding to an ACDV. *See* Miller Decl., Ex. 7, 16. The first response is "1 Account information accurate as of date reported." The manual describes that response as indicating "The account is accurately reported and there are no changes necessary." This is in fact the response that SELCO used in its first three responses. SELCO chose response code 2 in

8 – OPINION AND ORDER

its fourth response (which resulted in TransUnion fixing the inaccuracies). That response is "2 Modify account information as indicated." Miller Decl., Ex. 7, 16.

A jury could conclude SELCO reasonably relied on the e-OSCAR manual and training in limiting its investigation to the "Date of Account Information" provided by TransUnion. Or, the jury could look at the competing declaration and decide that while there was confusion on the part of CRAs and furnishers, SELCO acted reasonably under the circumstances. Finally, the jury could look at the FCRA relevant information provided by TransUnion on the second and third ACDVs and conclude SELCO's limited investigation was unreasonable.

## CONCLUSION

Because genuine questions of material fact remain, the cross motions for summary judgment, ECF Nos 28, 30 are DENIED.

IT IS SO ORDERED.

DATED this 11th day of January, 2015.


_____/s/ Michael McShane_____
Michael McShane
United States District Judge